Sandalio Arrieta SALGADO, Petitioner,

v.

Vincent J. SCANNEL, acting district director, Immigration and Naturalization Service, Respondent.

No. 77-1974
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Oct. 28, 1977.

J. C. Codias, Atlanta, Ga., for petitioner.

Griffin B. Bell, U. S. Atty. Gen., U. S. Dept. of Justice, Philip Wilens, Chief, Gov. Reg. & Labor Section, Rex L. Young, Atty., Washington, D. C., William L. Harper, U. S. Atty., Atlanta, Ga., James P. Morris, Atty., Dept. of Justice, Gov. Reg. & Labor Section, Washington, D. C., for respondent.

Before AINSWORTH, MORGAN and GEE, Circuit Judges.

PER CURIAM:

Petitioner Sandalio Arrieta Salgado, a 23-year-old male citizen of Mexico, seeks review of an order of the Board of Immigration Appeals finding him deportable under 8 U.S.C. § 1251(a)(2) for having entered the United States from Mexico without having been inspected by the Immigration and Naturalization Service. Salgado urges reversal of the Board's order on two grounds, neither of which we find persuasive. Accordingly, we affirm.

The evidence shows that Immigration and Naturalization Service investigators apprehended Salgado on May 18, 1976 in an Atlanta, Georgia restaurant where he was

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

working. He was arrested and taken to the Service office in Atlanta. While being questioned, Salgado executed an affidavit that established that he was an alien and that he entered the United States illegally. Following the interrogation, he was confined in the county jail until the next day, when he was served with an Order to Show Cause (Why Respondent Should Not Be Deported), Notice of Hearing and Warrant for Arrest. According to Salgado, he then posted bond and was released. Petitioner's Brief at 2. At the deportation hearing, the Service introduced Salgado's affidavit of May 18 to establish alienage and deportability and called the Service investigator who took the affidavit to testify to the procedures followed in taking the statement. Salgado chose not to testify (except to give his name, age, and marital status), citing his fifth amendment privilege against self-incrimination. The Immigration Judge found Salgado deportable and the Board of Immigration Appeals dismissed his appeal.

■■ Salgado now argues that his May 18 affidavit should have been suppressed because he was arrested without a warrant and was not taken before a magistrate. We find no merit in this contention. Under the express authority of the Immigration and Nationality Act, 8 U.S.C. § 1357(a)(1) and (2), the warrantless arrest was legal.[1] As to Salgado's complaint that he was not brought before a magistrate, we note that 8 C.F.R. § 287.3 outlines the procedures to be followed in instituting deportation proceedings after a warrantless arrest.[2] The record indicates full compliance with these procedures, which we find reasonable. There is no basis, therefore, for suppressing the May 18 affidavit.

■ Salgado's second complaint is that the Immigration Judge abused his discretion in denying Salgado the discretionary right to voluntary departure under 8 U.S.C. § 1254(e). Petitioner asserts that "the total procedure used by the Immigration Service

1. That section provides in part:
    (a) Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant—
    (1) to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States;
    (2) . . . to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States;

2. That section provides:
    An alien arrested without a warrant of arrest under the authority contained in section 287(a)(2) of the Immigration and Nationality Act shall be examined as therein provided by an officer other than the arresting officer, unless no other qualified officer is readily available and the taking of the alien before another officer would entail unnecessary delay, in which event the arresting officer, if the conduct of such examination is a part of the duties assigned to him, may examine the alien. If such examining officer is satisfied that there is prima facie evidence establishing that the arrested alien was entering or attempting to enter the United States in violation of the immigration laws, he shall refer the case to a special inquiry officer for further inquiry in accordance with Parts 235 and 236 of this chapter or take whatever other action may be appropriate or required under the laws or other regulations applicable to the particular case. If the examining officer is satisfied that there is prima facie evidence establishing that the arrested alien is in the United States in violation of the immigration laws, further action in the case shall be taken as provided in Part 242 of this chapter. An alien arrested without warrant of arrest shall be advised of the reason for his arrest and his right to be represented by council [sic] of his own choice, at no expense to the Government. He shall also be advised that any statement he makes may be used against him in a subsequent proceeding and that a decision will be made within 24 hours or less as to whether he will be continued in custody or released on bond or recognizance. Unless voluntary departure has been granted pursuant to § 242.5 of this chapter, the alien's case shall be presented promptly, and in any event within 24 hours, to the district director, deputy district director, or acting district director for a determination as to whether there is prima facie evidence that the arrested alien is in the United States in violation of law and for issuance of an order to show cause and warrant of arrest prescribed in Part 242 of this chapter.

in this particular case was lacking in due process of law, and made a mockery out of our system of justice." We have carefully reviewed the transcript of the deportation hearing. There was no denial of due process.

ENFORCED.