WONG CHUNG CHE and Wong Pui
Tong, Petitioners,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 77–1240.

United States Court of Appeals,
First Circuit.

Argued Sept. 8, 1977.

Decided Nov. 2, 1977.

Stanley R. Lapon, Cambridge, with whom Altman & Lapon, Cambridge, was on brief for petitioners.

Lauren S. Kahn, Atty., Dept. of Justice, Washington, D.C., with whom Philip Wilens, Chief, Government Regulations and Labor Section, Criminal Division, and James P. Morris, Atty., Dept. of Justice, Washington, D.C., were on brief, for respondent.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and WOLLENBERG, District Judge.*

COFFIN, Chief Judge.

Petitioners, two alien nonimmigrant crewmen, seek review of a Board of Immigration Appeals (Board) decision upholding the deportation order of an immigration judge. They seek either reversal of the finding of deportability or an evidentiary hearing to determine whether either the arrest or the search was illegal and whether evidence taken during either the arrest or search was improperly introduced into their deportation hearing.

The facts preceding their hearing were sketchily set forth in their affidavits supporting their motion to suppress any evidence taken during the arrest and search. They assert that Immigration and Naturalization Service (INS) investigators entered a Chinese restaurant in Raynham, Massachusetts, handcuffed them, took them to their apartment, and entered it without consent and without a warrant; that petitioners were "in fear"; and that certain entry forms and other documentation "may have been taken from [them]". Petitioners had little or no understanding of English, and required the services of an interpreter at their hearing. The motions to suppress were summarily denied without hearing or argument. All of the documentary evidence introduced, with one exception, came from INS files or had been given to INS by vessel agents.

The one exception was a Crewman's Landing Permit, which indicated that petitioner Wong Pui Tong was an alien crewman (allowed to stay in the United States for a period of 29 days after arrival) and that his last arrival date was February 21, 1974. There is nothing to indicate where this permit, normally in the possession of an alien crewman, came from. When petitioner Wong Chung Che, who testified first, was asked on direct examination what documentation had been taken from him, the immigration judge prevented an answer, it being clear that no documentation other than that from INS files or the vessel's agent had been introduced as to him. The question was not repeated to Wong Pui Tong.

The immigration judge disposed of the allegations in the affidavits by noting that they were "most inconclusive" and that petitioners were "certainly aware" whether anything had been taken from them. As to petitioner Wong Chung Che, he found clear, convincing, and unequivocal evidence of deportability from a Report of Deserting Crewmen form received from the vessel and a report of investigation from INS files, together with a Seaman's Identity Book and photographs of the petitioner. As to Wong Pui Tong, the immigration judge found sufficient evidence in the Crewman's Landing Permit, which showed petitioner's name, status as a crewman, date of last arrival, but no evidence of an extension of time beyond 29 days thereafter. The immi-

* Of the Northern District of California, sitting by designation.

gration judge dealt with the objection to the permit by observing that (a) it is required by law to be in a crewman's possession and to be shown to an immigration officer on request, and (b) the circumstances of petitioner's arrest were irrelevant. He did not deal with the issue of a possibly illegal search.

The board affirmed the immigration judge's conclusion as to deportability. It observed that Wong Pui Tong's Crewman's Landing Permit, as well as petitioner's burden to show time, place, and manner of entry into the United States constituted clear, convincing, and unequivocal evidence of deportability. It dealt with the objection to the permit by noting that it was admissible as an official document produced in the regular course of INS operations,[1] and that it was no less admissible although petitioner's presence had been discovered through an improper arrest. The Board did not consider the issue of a possibly illegal search.

We first affirm the Board's action as to Wong Chung Che. Any challenge to either his arrest or search of his premises is irrelevant. There is no indication or even contention that anything introduced in evidence against him was tainted by any illegality. The only question of taint relates to the Crewman's Landing Permit introduced against Wong Pui Tong.

Our threshold question is whether petitioner Wong Pui Tong has done enough to raise the issues of illegal arrest and search. "The cases hold that a mere demand for a suppression hearing is not enough to cause one to be held. Statements in a motion for suppression must be specific and detailed. They should not be general, conclusory or based on conjecture. They must be based on personal knowledge. They [sic] must set forth a prima facie case. The articles to be suppressed must be enumerated." *Matter of Wong*, 13 I & N Dec. 820, 822 (BIA 1971) (citations omitted).

It seems to us that petitioner has met that burden. Petitioner's knowledge of the English language was sharply limited. If, as alleged, he was handcuffed at a restaurant and taken to his apartment, had not given consent, and was in fear, and if agents did rummage around, it is not wildly unlikely that he did not know what was actually taken. While we might suppose that normally an alien crewman would know where his landing permit was, we now know that petitioner left his ship on February 21, 1974, and was not apprehended until September 2, 1976, over two and one half years later. Had petitioner affirmatively alleged that his Crewman's Landing Permit had been taken in the search, there would be no question but that he had met his burden. *Matter of Tang*, 13 I & N Dec. 691, 692 (BIA 1971); *Matter of Wong*, supra. That petitioner, if confused, chose to be scrupulously honest should not be held against him so long as the specific circumstances alleged raise the realistic possibility of an illegal search. In the absence of an explanation or disclaimer of illegal acquisition by the government, we hold that the allegations and circumstances here were sufficient to have required an evidentiary hearing, if illegality of the arrest or search could have a bearing on the legality of the deportation hearing.

Insofar as petitioner's challenge rests on an allegedly illegal arrest, the law seems to be well established that an illegal arrest which results in identifying a person for deportation proceedings does not invalidate the proceedings. *Huerta-Cabrera v. INS*, 466 F.2d 759 (7th Cir. 1972). Nor does such an arrest in which statements are obtained that would be suppressed, for lack of warnings, in a criminal trial render the statements inadmissible in a deportation proceeding. *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 44 S.Ct. 54, 68 L.Ed. 221 (1923); *Chavez-Raya v. INS*, 519 F.2d 397 (7th Cir. 1975).

The more troublesome question is one addressed by neither the immigration judge nor the Board—whether evidence secured by an illegal search is admissible in a depor-

1. This assertion is, as we have noted, without support in the record.

tation hearing. Unfortunately, we have not been greatly assisted by counsel. Petitioner's brief struggles with marginal authorities and analogies. The government advances the broad proposition that "even if material had been introduced at the deportation hearing that had been improperly obtained for the purposes of a criminal proceeding, it would still have been admissible at the deportation hearing." For this proposition, which must have been intended to respond to petitioner's illegal search claim as well as his illegal arrest claim, the government cites only cases involving statements made by aliens in the absence of warnings or counsel,[2] a case in which we noted the wide scope of the Board in discretionary matters,[3] and *United States ex rel. Bilokumsky v. Tod, supra.* The only case among these which is relevant to the issue of illegal search points against the government. In *Bilokumsky* the Court said, "It may be assumed that evidence obtained by the Department through an illegal search and seizure cannot be made the basis of a finding in deportation proceedings." 263 U.S. at 155, 44 S.Ct. at 56.

Gordon and Rosenfield in their treatise, Immigration Law and Procedure, § 5.2c, p. 5–31, state: "It is undisputed . . . that the Fourth Amendment's prohibition against unreasonable searches and seizures applies in deportation proceedings and that evidence obtained as the result of an unlawful search cannot be used." *See also id.* § 5.10a, p. 5–116; § 5.10f, p. 5–141. In *Huerta-Cabrera v. INS, supra,* the court, after noting that an illegal arrest resulting in obtaining the "body" of the arrestee did not render a subsequent deportation proceeding the fruit of the poisonous tree, said, "This would not be a case of the use of evidence seized during the course of an illegal arrest." 466 F.2d at 761 n.5. *See also United States v. Villella,* 459 F.2d 1028 (9th Cir. 1972); *Vlissidis v. Anadell,* 262 F.2d 398 (7th Cir. 1959). *Cf. Katris v. INS,* 562 F.2d 866, at 869 (2d Cir. 1977) ("Although Katris seeks 'suppression,' there is no evidence to suppress. . . . [N]o evidence was seized at or after the time of arrest.")

If petitioner's Crewman's Landing Permit was obtained through an illegal search, there is no authority of which we are aware that would make it admissible. Such authority as we have found, however, assumes that it is inadmissible. While wide latitude is permitted the government in introducing statements of arrested suspects, whether or not they might be suppressed in a criminal proceeding, we can think of no justification by necessity for encouraging illegal searches of premises.[4] There is no doubt that, if the landing permit was obtained through an illegal search, its admission into evidence infected the deportation proceeding. Both the immigration judge and the Board relied on the permit to supply a critical missing link in the evidence. *See Au Yi Lau v. INS,* 144 U.S.App. D.C. 147, 445 F.2d 217, 224 n.11 (1971).

*We accordingly vacate the order of deportation as to Wong Pui Tong and remand to the Board for an evidentiary hearing on petitioner's motion to suppress insofar as it concerns the legality of any search made of his premises. We affirm the order of deportation as to Wong Chung Che.*

**2.** *Chavez-Raya v. INS,* 519 F.2d 397 (7th Cir. 1975); *Strantzalis v. INS,* 465 F.2d 1016 (3d Cir. 1972); *Nai Cheng Chen v. INS,* 537 F.2d 566 (1st Cir. 1970); *Lavoie v. INS,* 418 F.2d 732 (9th Cir. 1969); *Nason v. INS,* 370 F.2d 865 (2d Cir. 1967); *Pang v. INS,* 368 F.2d 637 (3d Cir. 1966).

**3.** *Goon Wing Wah v. INS,* 386 F.2d 292 (1st Cir. 1967).

**4.** The fact, relied upon by the immigration judge, that the law requires an alien crewman to keep his landing permit in his possession and show it on request does not justify an illegal search of a crewman's living quarters if he does not have the permit on his person.