617 F.2d 201
 MIN-SHEY HUNG, Petitioner-Appellant,
v.
UNITED STATES of America, Robert Godshall, District
Director, Immigration and Naturalization Service,
and Jack Holmes, an Immigration Officer,
Respondents-Appellees.
 No. 79-1413.
 United States Court of Appeals,
Tenth Circuit.
 Argued Jan. 21, 1980.
Decided March 10, 1980.
 
 Ann Allott, Littleton, Colo., for petitioner-appellant.
 William C. Danks, Asst. U. S. Atty., Denver, Colo. (Joseph Dolan, U. S. Atty., Denver, Colo., with him on the brief), for respondents-appellees.
 Before SETH, Chief Judge, and LOGAN and SEYMOUR, Circuit Judges.
 SETH, Chief Judge.
 
 
 1
 The petitioner was arrested by Immigration and Naturalization (INS) agents about 7:00 p. m. on March 22nd. He was taken with many others to the Detention Center and then to the Denver jail that evening. In the morning he consulted with an attorney. The Deputy Director of the INS issued an Order to Show Cause (8 C.F.R. § 242.1(a)) why petitioner should not be deported, set the hearing for April 2nd, and fixed bond. Petitioner was released about noontime on a bond requiring him to appear at the deportation hearing.
 
 
 2
 The petition for habeas corpus was filed with the District Court on March 28, and asserted that petitioner was being unlawfully restrained by the District Director. The Director on the issuance of the Order to Show Cause made a determination as would a magistrate that the facts were sufficient, which had been advanced for the show cause order, to support deportation of petitioner. An alien arrested without a warrant must be taken without unnecessary delay before an INS officer having authority to examine aliens as to their right to remain in the United States. 8 U.S.C. § 1357(a)(2). This was done in the case before us. This is basically the same as a criminal proceeding before a magistrate on probable cause. Probable cause was thus also determined by the District Director. This, in our view, was sufficient to meet the constitutional standards and to commence the deportation proceedings. Probable cause for the arrest was so determined.
 
 
 3
 It is apparent that the petitioner's initial custody was pursuant to an arrest by the immigration officers without a warrant. However, the nature of this custody changed the following morning when the District Director of the Service issued the Order to Show Cause and made the probable cause determination. Petitioner was thus well along the deportation proceedings when the petition for habeas corpus was filed challenging his arrest.
 
 
 4
 The Court in Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54, when considering the Florida criminal procedures, said: "The Fourth Amendment probable cause determination is addressed only to pretrial custody." The Court also noted that the Constitution does not require "an adversary determination of probable cause," and that the "probable cause determination is not a constitutional prerequisite to the charging decision." Further in Gerstein the Court said:
 
 
 5
 "Whatever procedure a State may adopt, it must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest."
 
 
 6
 See under the former procedure, Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668. The standard applicable to a state was met here by the INS, and the proceedings had passed the probable cause stage sought to be challenged by the petition for writ of habeas corpus.
 
 
 7
 The deportation proceedings thus commenced must be allowed to proceed without the intervention of proceedings in the district court challenging the arrest. The legality of petitioner's arrest and search challenges are customarily tested in the district court when a deportation order is received. This was done in United States v. Reyes-Oropesa, 596 F.2d 399 (9th Cir.); Lee v. Immigration & Naturalization Serv., 590 F.2d 497 (3d Cir.); Wong Chung Che v. Immigration & Naturalization Serv., 565 F.2d 166 (1st Cir.); Katris v. Immigration & Naturalization Serv., 562 F.2d 866 (2d Cir.); Salgado v. Scannel, 561 F.2d 1211 (5th Cir.); and Aguirre v. Immigration & Naturalization Serv., 553 F.2d 501 (5th Cir.). In the cases above cited the courts considered arrest challenges on petitions for review. The opinions do not, however, hold that this may be the only challenge and did not discuss the point.
 
 
 8
 It is possible in some jurisdictions that the illegality of arrest alone will not invalidate a deportation order. The Second Circuit, for example, will not consider the illegality of arrest contention if the alien has admitted during the deportation hearings that he is illegally in the country. Katris v. Immigration & Naturalization Serv., 562 F.2d 866 (2d Cir.). If the challenge to a deportation order rests on an illegal arrest, the First Circuit holds that the deportation proceedings are not invalidated on the ground that petitioner was identified by the arrest. Wong Chung Che v. Immigration & Naturalization Serv., 565 F.2d 166 (1st Cir.). It is obvious in these jurisdictions that the legality of arrest, if this is the only issue, may never be considered if not done at the outset. This is after all not much different from the doctrine which precludes in most jurisdictions the examination of the legality of petitioner's arrest in post-conviction proceedings.
 
 
 9
 However, the legality of Min-Shey Hung's arrest can be tested again, as above suggested, when review is sought in the district court of a deportation order should it be issued. The custody of the petitioner during the course of the civil proceedings, the releases, bonding and appearances should be under control of the INS. The original arrest may not initially be the most significant factor then considered; however, it is examined during the course of the proceedings and a record is developed. The trial court should not have considered the arrest challenge while the INS deportation proceedings were in progress and had passed the probable cause stage. Whether this is the ordinary doctrine of administrative exhaustion or a matter of primary jurisdiction does not matter as the consequences are much the same.
 
 
 10
 The judgment of the district court is affirmed for the reasons above described.