**Jose Orlando ARIAS and Jose Rene Arias, Petitioners,**

v.

**Joel ROGERS, Acting District Director of the U. S. Immigration and Naturalization Service, et al., Respondents.**

**No. 81–1936.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 21, 1982.

Decided Feb. 11, 1982.

Alan M. Freedman, Bruce H. Bornstein, Freedman & Bornstein, Virgil W. Mungy, Terry Hepp, Virgil W. Mungy & Associates, Chicago, Ill., for petitioners.

Edward J. Moran, Asst. U. S. Atty., Dan K. Webb, U. S. Atty., Frederick H. Branding, Chief, Civ. Div., James T. Hynes, Asst. U. S. Attys., Chicago, Ill., for respondents.

Before CUMMINGS, Chief Judge, SWYGERT, Senior Circuit Judge, and POSNER, Circuit Judge.

POSNER, Circuit Judge.

This appeal from the denial of a petition for a writ of habeas corpus requires us to consider a question of first impression in this circuit: whether someone who is in custody because the government is trying to deport him may test the legality of his detention in a habeas corpus proceeding after formal deportation proceedings have begun but before a final order of deportation has issued.

At about 3:30 p. m. on May 20, 1981, criminal investigators of the Immigration and Naturalization Service entered an apartment in Chicago and arrested the two petitioners on suspicion that they were illegal aliens. The investigators did not have arrest warrants. Nevertheless, had the officers been in the apartment lawfully, the arrests might have been lawful under 8 U.S.C. § 1357(a)(2), which authorizes any INS officer "to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States [illegally] and is likely to escape before a warrant can be obtained for his arrest." But it seems to be conceded that the officers were in the apartment lawfully only if they entered with the consent of at least one of the occupants; and the court below, which denied the petition for habeas corpus after the petitioners had completed the presentation of their evidence, held that they had made out a prima facie case that the entry was not consented to. For purposes of this appeal, therefore, we shall treat the arrests as unlawful.

Once in the apartment the officers proceeded to search it and to question the petitioners, extracting certain admissions that the petitioners contend were fruits of the illegal arrests. After being questioned, the petitioners were taken to a local jail.

There was no deportation proceeding pending against them at the time of the arrests.

A half hour after the arrests, the petitioners' lawyer tried to submit an oral petition for habeas corpus to a federal judge, complaining that the arrests and resulting detention were unlawful. The lawyer was told to come back the next morning (May 21) with a written petition. He did so. That afternoon the INS served the petitioners, in jail, with an order to show cause why they should not be deported as illegal aliens. The issuance of the order commenced deportation proceedings against the petitioners. See 8 U.S.C. § 1252(b); 8 C.F.R. § 242.1(a). Although the order is not in the record on this appeal, apparently it directed that bond be set for the petitioners at $4000 and scheduled a deportation hearing before an immigration judge for 9:00 a. m. the next day. At the hearing the petitioners could have requested a reduction in bond, see 8 C.F.R. § 242.2(a), but no representative of the petitioners showed up for the hearing and they remained in jail.

Evidentiary hearings on the petition for habeas corpus were held before a federal district judge on May 26 and 27, but on June 2, before the INS put in its case, the district judge dismissed the petition on the ground that the commencement of deportation proceedings on the afternoon of May 21 had deprived him of jurisdiction to grant habeas corpus. The INS had meanwhile scheduled another deportation hearing for the petitioners for May 27, but at their request it was postponed and has not yet been held. The petitioners are no longer in custody. They were released on bond on or after June 2. The record does not disclose the date of their release or the amount of the bond.

■ We understand, of course, why the petitioners sought habeas corpus after they were arrested and put in jail—they wanted their freedom. The motive for this appeal is less easily understood since the petitioners are now free on bond. True, their freedom is neither complete nor secure. Under 8 U.S.C. § 1252(a), the bond is revocable at

will and their liberty while they are out on bond may be conditioned in various ways. Although the record does not disclose what if any conditions have been imposed, at the very least they have lost the use of their bond money. From the briefs and oral argument on this appeal, however, it appears that the petitioners are after bigger game than being relieved from what may well be the trivial burdens associated with their bond status. What they principally want is for the district court to enter an order barring the INS from using in the deportation proceedings any admissions or other evidence (perhaps even their identity) traceable to their arrests, assuming the arrests are finally determined to have been unlawful. But this relief they cannot obtain, at least by way of a petition for habeas corpus. The purpose of habeas corpus is to test the legality of a detention. See 28 U.S.C. § 2241. It is not a substitute for a motion to suppress. In any event, orderly procedure requires that such a motion be made at the deportation hearing itself rather than in a collateral proceeding.

The petitioners are well aware that they can file a motion to suppress at their deportation hearing but they are afraid that it will be denied. It is an open question whether the rule, familiar from criminal proceedings, whereby a defendant can prevent evidence seized as an incident to an illegal arrest from being used in evidence against him is applicable to deportation proceedings. See 1A Gordon & Rosenfield, Immigration Law and Procedure § 5.2c, at 5–32.9 n.31a (rev.ed.1981). Apparently the INS considers the exclusionary rule inapplicable. See *In re Sandoval*, 17 I. & N. Dec.No. 2725 (BIA 1979). But the courts will have the last word on the question. If they hold that the exclusionary rule is applicable, then these petitioners will be able to obtain, either in the deportation proceeding itself or in a habeas corpus proceeding after a final order of deportation is entered, see 8 U.S.C. § 1105a(a)(9), whatever relief the rule entitles them to. If instead the courts ultimately hold the exclusionary rule inapplicable, whether to all deportation matters or just in the specific circumstances

of these petitioners' arrests, it will not mean that the petitioners were entitled to an order in this proceeding excluding from the deportation proceedings against them evidence that by hypothesis is lawful evidence in such proceedings; it will mean the exact opposite.

■ Although the main thing they want here is an order suppressing evidence or leads obtained from the allegedly unlawful arrests, the petitioners, despite being out on bond, are still in custody for purposes of habeas corpus. See *Hensley v. Municipal Court*, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973), for the general principle, and *Flores v. INS*, 524 F.2d 627 (9th Cir. 1975), for its application to deportation. We must therefore decide whether the court below had the power to release them from custody.

■ If the petitioners had been arrested illegally by INS officers and carted off to jail and the INS had made no move to begin deportation proceedings, the petitioners would have been entitled to obtain their freedom through a habeas corpus proceeding because their detention would have violated the Fourth Amendment, which forbids "unreasonable ... seizures," including arrests, of persons whether or not they are citizens; and the immigration laws, specifically 8 U.S.C. § 1357(a)(2). That statute requires that an alien arrested without a warrant "be taken without unnecessary delay before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States." The reference is to a special inquiry officer, also called an immigration judge. See 8 C.F.R. § 242.8(a). Special inquiry officers have judicial authority, see *id.*, and therefore correspond to the committing magistrate in a criminal proceeding. See *Yiu Fong Cheung v. INS*, 418 F.2d 460, 463 (D.C.Cir.1969). *United States ex rel. Martinez-Angosto v. Mason*, 344 F.2d 673, 680 (2d Cir. 1965), specifically holds that someone held in jail in violation of 8 U.S.C. § 1357(a)(2) can obtain his freedom in a habeas corpus proceeding.

■ At the other extreme, suppose that before any arrests had been made the INS had issued an order to show cause why the petitioners should not be deported, see 8 U.S.C. § 1252(b) and 8 C.F.R. § 242.1(a), and had scheduled a prompt deportation hearing. Suppose that at the same time, also pursuant to statute, 8 U.S.C. § 1252(a), and regulation, 8 C.F.R. § 242.2(a), the INS had issued warrants for the petitioners' arrest, had taken them into custody, and had advised them of their rights, which include the right to apply immediately to an immigration judge for release from custody and the right to appeal to the Board of Immigration Appeals from any adverse decision of that judge. See 8 C.F.R. § 242.2(b). If under these assumptions the petitioners, as soon as they were arrested, had without pursuing any of their administrative remedies petitioned a federal district judge for habeas corpus, the judge would have had to deny the petition. The petitioners in such a case could not complain that they were being detained in violation of the Constitution or laws of the United States; the proximate cause of their detention would be their own failure to pursue the remedies that Congress and the INS have established to test the legality of their detention. See, e.g., *United States ex rel. Tsermegas v. Neelly*, 210 F.2d 876 (7th Cir. 1954). Of course if the system of remedies were a sham or a farce it would not invest the detention with sufficient legality to defeat a habeas corpus application. But the regulations appear to provide adequate administrative safeguards against unlawful detention, safeguards essentially equivalent to those that criminal suspects enjoy against unlawful detention. Cf. 1A Gordon & Rosenfield, *supra*, § 5.7a. We have no evidence to suggest that this appearance is deceptive.

■ There is, it is true, one apparent gap in the pattern of administrative protections. The statute and regulations do not define the authority of the special inquiry officer when an alien who has been arrested without a warrant pursuant to 8 U.S.C. § 1357(a)(2) is brought before him. But we assume (and perhaps 8 C.F.R. § 287.3 implies) that he has the same authority that a committing magistrate would have, and that the special inquiry officer is explicitly given in 8 C.F.R. § 242.2(b) when the arrest is pursuant to warrant, to order the release of one who is detained illegally. It is of course possible that the detention might be legal although the arrest was not. In the criminal law, if there is probable cause to hold an accused he cannot gain his freedom by showing that the arrest was illegal, although he may be able to suppress at his trial evidence seized as an incident to his arrest. This court has applied the same principle, distinguishing illegal arrest from illegal detention, in deportation cases. See *Guzman-Flores v. INS*, 496 F.2d 1245 (7th Cir. 1974). To give a person who has been illegally arrested total immunity from either criminal punishment or deportation is an excessive sanction for the illegal arrest. But all this is an aside. We are not concerned with the question whether every illegal arrest makes the subsequent detention illegal but with the authority of the special inquiry officer to release a detained alien who was arrested without a warrant; since that authority is as broad as a committing magistrate's, the safeguards provided by the INS against illegal detention are constitutionally adequate.

■ The present case is somewhere in between the two extreme situations discussed above. The petitioners were arrested before deportation proceedings had begun and, we assume for purposes of this appeal, illegally. But they were not left to languish in jail. Deportation proceedings were instituted within 24 hours, before the petitioners could be released by the judge in the habeas corpus action; and thereafter the petitioners could avail themselves of the administrative remedies sketched in the preceding paragraph. From the moment the petitioners were able to pursue them, their detention was no longer so lawless as to allow a judge to free them under the habeas corpus statute.

Thus we agree with the district judge below and the Tenth Circuit in *Min-Shey Hung v. United States*, 617 F.2d 201 (10th Cir. 1980), that once deportation proceedings have begun the legality of the alien's detention can no longer be tested by way of

a habeas corpus proceeding. But we add a qualification: at least if the proceedings are begun with reasonable promptness after the alien's arrest. The statute itself authorizes a federal court to release an alien, pending deportation proceedings, "upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to determine deportability." 8 U.S.C. § 1252(a). This provision literally applies only when deportation proceedings have begun, and are being strung out by the INS without good cause while the alien remains in custody. It therefore does not cover the situation where the INS arrests an alien illegally, and initially makes no move to commence deportation proceedings; the alien petitions for habeas corpus; after conducting an evidentiary hearing and finding that the arrest and subsequent detention were illegal the judge is about to order the alien's release when the INS, to head him off, issues an order to show cause; or perhaps the judge has ordered the alien's release and the INS issues an order to show cause and rearrests the alien as he leaves the courthouse. Even here it could be argued that the court's power to release the alien is cut off because once deportation proceedings have begun the detention is no longer contrary to the Constitution or laws of the United States. We need not decide whether this argument would prevail no matter how long the INS delayed the commencement of deportation proceedings. In both *Min-Shey Hung* and the present case deportation proceedings were begun within 24 hours of the arrests, and that is sufficient promptness to confine the alien thereafter to his administrative remedies. Therefore we limit our holding as indicated above.

Nothing in this opinion should be read to condone unlawful arrests of persons suspected of being deportable. Only the INS's promptness in commencing deportation proceedings after the arrests prevented the petitioners from obtaining their freedom in this habeas corpus action before those proceedings were initiated. And however promptly begun, the deportation proceedings could not retroactively validate unlawful arrests, if such they were. Thus we do not prejudge the petitioners' rights to complain, either in those proceedings or in a civil rights damages action, both about their arrests and about their detention prior to the commencement of the deportation proceedings.

Finally, we note the government's assurance at oral argument that the petitioners will not be rearrested before a final deportation order is issued. This is an appropriate commitment in view of the questionable circumstances of the arrests and we expect the government to abide by it.

AFFIRMED.