Alfredo GUZMAN–FLORES et al., Petitioners,

v.

UNITED STATES IMMIGRATION & NATURALIZATION SERVICE, Respondent.

Pedro CASTELLANOS–CASTILLO, Petitioner,

v.

IMMIGRATION & NATURALIZATION SERVICE, Respondent.

No. 73–1313, 73–1525.

United States Court of Appeals, Seventh Circuit.

Heard April 9, 1974.

Decided May 28, 1974.

---

Ralph M. Schelly, Chicago, Ill., for petitioners.

Mary Jo Grotenrath, U. S. Dept. of Justice, Washington, D.C., James R. Thompson, U. S. Atty., Chicago, Ill., for respondent.

Before SWYGERT, Chief Judge, SPRECHER, Circuit Judge and NOLAND,* District Judge

NOLAND, District Judge.

These cases have been consolidated for argument and decision by the Court as they raise the same legal issue on appeal and are very similar on the facts. Petitioners are all natives and citizens of Mexico and seek review of a final order of deportation issued in Cause Number 73–1313 on December 27, 1972 and in Cause Number 73–1525 on February 23, 1973, against them by the Immigration and Naturalization Service. Petitioners challenge the orders by challenging the validity of the deportation proceedings on the ground that their arrests by local police without probable cause were unconstitutional and rendered all subsequent proceedings invalid as being the "fruit of the poisoned tree."

In Number 73–1313 the five petitioners admittedly entered the United States without inspection by entering at various points in Texas during 1972. At the deportation hearing counsel for the petitioners moved to terminate the proceedings on the grounds that the arrest of petitioners was illegal and thus tainted the deportation proceedings. Counsel made an offer to prove after the Special Inquiry Officer overruled the motions to terminate.

Petitioners allege that on July 8, 1972, they were riding in an automobile on the Stevenson Expressway when, without probable cause other than suspicion of their alienage, police officers of the Summit Police Department stopped them, questioned them regarding their alienage, and then took them into custody. No charges were filed by the local authorities but petitioners were held overnight and then turned over to the immigration service the next day.

The Special Inquiry Officer rejected petitioners' contentions and denied the motions for termination. Thereafter, all five petitioners admitted their illegal presence in this country and admitted deportability. Each requested the privilege of voluntary departure, which was granted. The Special Inquiry Officer found the petitioners deportable for violating 8 U.S.C. § 1251(a)(2), entering the United States without inspection. The findings were appealed to the Board of Immigration Appeals which sustained the decision by the Special Inquiry Officer both on the issue of deportability and on the denial of the motions to terminate.

In Number 73–1525 the petitioner admittedly is an alien who entered the United States to work and who does not possess an immigrant visa or other entry documents which permit him to work in this country. Petitioner entered the United States in 1971 with a local border crossing card which he later mailed back to his home in Mexico. At the deportation hearing this petitioner also moved to terminate the proceedings on

---

* District Judge James E. Noland of the Southern District of Indiana is sitting by designation.

the ground that his arrest was unconstitutional and thus tainted the deportation proceedings. Counsel also made an offer to prove after the Special Inquiry Officer overruled the motion.

This petitioner alleges that he was walking down the street near his home in Palatine, Illinois when he was stopped by the local police. He alleges that there was no probable cause for his arrest other than suspected alienage. He was detained overnight by the local authorities without any charges being lodged against him, and was turned over to the immigration service the next morning.

After the Special Inquiry Officer denied the motion to terminate, petitioner admitted deportability and requested the privilege of voluntary departure, which was granted. The Special Inquiry Officer found petitioner deportable under 8 U.S.C. § 1251(a)(1) as an immigrant who is excludable. The findings were appealed to the Board of Immigration Appeals which sustained the decision both on the issue of deportability and on the denial of the motion to terminate.

In both cases the Special Inquiry Officer ruled that he had no authority to inquire into the legality of an arrest by local police officers. This ruling was affirmed by the Board of Immigration Appeals, which Board also found that there was "clear, convincing and unequivocal" evidence to support the deportation order. This appeal followed with jurisdiction founded on 8 U.S.C. § 1105a.

Petitioners do not question that they are illegal aliens who may be deported from the United States. Their sole contention in this appeal is that the deportation proceedings should have been terminated because they were arrested by local police without probable cause in violation of the Fifth and Fourteenth Amendments. This they claim tainted the subsequent proceedings making the order of deportation illegal as well. In essence, petitioners seek the application of an exclusionary rule to a false arrest

case so as to suppress their physical presence before the immigration authorities and prevent their deportation.

The Fourth Amendment exclusionary rule was recently reviewed by the Supreme Court in United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed. 2d 561 (1974). In *Calandra* the Court points out that the rule is a judicially-created remedy designed to safeguard Fourth Amendment guarantees by utilizing the technique of suppression of evidence to achieve deterrence and not a rule to safeguard personal constitutional freedoms. *Id.* at 620. Further, the need for the rule is "strongest where the Government's unlawful conduct would result in imposition of a criminal sanction on the victim of the search." *Id.*

We note initially that the record in this case does not disclose any "evidence" used against these petitioners to establish their deportability which was obtained as a result of any search or their arrest. Instead, petitioners argue that their physical presence is the evidence to be suppressed as that presence was obtained illegally. This, they assert, is the "fruit of the poisoned tree" which must be suppressed to protect their constitutional rights.

Historically the remedy for an unconstitutional arrest has been a civil action for false arrest and false imprisonment. Luker v. Nelson, 341 F.Supp. 111 (N.D. Ill.1972). No case has been pointed out by petitioner which has applied an exclusionary rule to require the termination of a court proceedings because of an illegal arrest, and, in fact, such has not been held by the courts to be necessary. As we pointed out in Vlissidis v. Anadell, 262 F.2d 398 (7th Cir. 1959):

> "As to the claimed unlawful arrest, it has long been settled that an unlawful arrest has no effect on the power of a tribunal to try the person so arrested. [Citation omitted]. Evidence obtained as a result of an unlawful arrest may be suppressed, but we know of no authority for holding a deportation proceedings such as we are here

**1248**

considering to thus become null and void." *Id.* at 400.

This position was again reiterated in Huerta-Cabrera v. Immigration & Naturalization Service, 466 F.2d 759 (7th Cir. 1972) where we said:

"Even if the arrest were illegal, the mere fact that the authorities got the 'body' of Huerta-Cabrera illegally does not make the proceeding prosecuting him or deporting him the fruit of the poisoned tree. This would not be a case of the use of evidence seized during the course of an illegal arrest." *Id.* at 761 n.5.

This general principle, that the illegality of an arrest does not destroy a later valid proceeding, has long been recognized by the Supreme Court and is still a valid rule of law. Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); Ker v. Illinois, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886). Several other Circuits have reiterated this principle recently in the following cases: Taylor v. Alabama, 465 F.2d 376 (5th Cir. 1972); United States v. Woodring, 446 F.2d 733 (10th Cir. 1971); United States v. Morris, 445 F. 2d 1233 (8th Cir. 1971); Autry v. Wiley, 440 F.2d 799 (1st Cir. 1971); High Pine v. Montana, 439 F.2d 1093 (9th Cir. 1971); LaFranca v. Immigration & Naturalization Service, 413 F.2d 686 (2d Cir. 1969).

Clearly petitioners herein have admitted their deportability at the deportation proceedings. The Service did not rely on any evidence seized at the time of their arrests by local authorities to establish their deportability. Thus, even if those arrests were illegal, this does not invalidate the subsequent deportation proceedings. LaFranca v. Immigration & Naturalization Service, 413 F.2d 686 (2d Cir. 1969); Shing Hang Tsui v. Immigration & Naturalization Service, 389 F.2d 994 (7th Cir. 1968); Miller v. Quatsoe, 332 F.Supp. 1269 (E. D.Wis.1971). There is clear, unequivocal and convincing evidence in the

record to support the order of deportation.

While petitioners urge this Court to apply the Fourth Amendment in this case, we cannot accept this contention which would extend the exclusionary rule to the Fifth Amendment context of arrest absent an unlawful search. Therefore, for the reasons set out herein, the deportation order is affirmed.