Miguel AVILA–GALLEGOS,
Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 196, Docket 74–2647.

United States Court of Appeals,
Second Circuit.

Argued Sept. 29, 1975.

Decided Nov. 7, 1975.

William H. Oltarsh, New York City,
for petitioner.

Thomas H. Belote, Sp. Asst. U. S.
Atty., New York City (Paul J. Curran,
U. S. Atty. for the Southern District of
New York, Steven J. Glassman, Asst. U.
S. Atty., of counsel), for respondent.

Before LUMBARD, ANDERSON and
VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

On October 8, 1973, petitioner, a na-
tive of Ecuador, entered the United
States from Mexico without an immi-
grant visa or other valid entry docu-
ment. This is a petition to review an
order of the Board of Immigration Ap-
peals that he be deported.

Since petitioner himself testified be-
fore the Immigration Judge concerning
the illegal manner of his entry, one
might well ask, "Why the appeal?" The
answer here, as in so many other cases is
an alleged violation of petitioner's consti-
tutional rights.[1] He contends that his
arrest was illegal because it was without
warrant or probable cause and that he
failed to receive proper *Miranda* warn-
ings. Arguing from this premise, he
concludes that all testimony at the de-
portation hearing should have been sup-
pressed and the case against him dis-
missed. We agree with neither the
premise nor the conclusion.

1. We also note that this appeal has gained petitioner almost one year's reprieve from de-
portation.

The facts surrounding petitioner's apprehension are uncomplicated. INS officials, in response to a complaint from the New York State Department of Labor, called upon petitioner's employer to inquire into the employment of illegally admitted aliens. After reviewing personnel records, the officers interviewed petitioner and several of his co-workers in the presence of factory officials. During this interview, petitioner admitted that he was an alien illegally in the United States. Upon his subsequent inability to produce a passport, he was taken to the Immigration Office where *Miranda* warnings were given and a written statement secured. The deportation hearing followed.

■ Since deportation proceedings are not criminal in nature, *Woodby v. Immigration and Naturalization Service*, 385 U.S. 276, 285, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966), there was no necessity for *Miranda* warnings. *Chavez-Raya v. Immigration and Naturalization Service*, 519 F.2d 397 (7th Cir. 1975). In any event these warnings would not have been required prior to the time they were given because, until then, petitioner was not in custody or under any restraint. *Nason v. Immigration and Naturalization Service*, 370 F.2d 865, 868 (2d Cir. 1967).

■ Our recent decision in *Ojeda-Vinales v. Immigration and Naturalization Service*, 523 F.2d 286 (2d Cir. 1975), is four-square authority that petitioner's arrest was not illegal.[2] Here, as in *Ojeda-Vinales*, the information originally received by INS justified the initiation of

an investigation, and "petitioner's own voluntary responses to the agent's questions provided the extra measure of evidence needed to establish probable cause for his arrest." *Id.* at 288. Here, also, the likelihood of petitioner's escape justified his apprehension without a warrant.[3]

■ Assuming, *arguendo*, that petitioner's arrest was technically defective, it does not follow that the deportation proceedings were thereby rendered null and void. This argument was rejected by the Supreme Court many years ago. *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158, 44 S.Ct. 54, 68 L.Ed. 221 (1923). We have followed *Bilokumsky*, as have the courts of other circuits. *See La Franca v. Immigration and Naturalization Service*, 413 F.2d 686, 689 (2d Cir. 1969); *Vlissidis v. Anadell*, 262 F.2d 398 (7th Cir. 1959); *Huerta-Cabrera v. Immigration and Naturalization Service*, 466 F.2d 759 (7th Cir. 1972) (per curiam); *Guzman-Flores v. Immigration and Naturalization Service*, 496 F.2d 1245 (7th Cir. 1974).

■ Regardless of the legality of his arrest, since petitioner's deportation hearing testimony, standing alone, was sufficient to support the order of deportation, his petition for reversal of such order and dismissal and termination of the deportation proceedings should be denied. *Medeiros v. Brownell*, 99 U.S. App.D.C. 396, 240 F.2d 634 (1957) (per curiam); *Shing Hang Tsui v. Immigration and Naturalization Service*, 389 F.2d 994 (7th Cir. 1968) (per curiam). *Cf. United States ex rel. Pantano v. Corsi*, 65 F.2d 322, 323 (2d Cir. 1933).

Petition denied.

**2.** Petitioner was arrested under authority of 8 U.S.C. § 1357(a)(2) which provides:

Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant— . . . to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any [immigration] law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without un-

necessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States.

**3.** Prior to his arrest, petitioner admitted to the INS officers that he had been "caught" twice in California after his illegal entry. From this, the officers could reasonably infer that he had in some way escaped and was likely to do so again. *See La Franca v. Immigration and Naturalization Service*, 413 F.2d 686, 689 (2d Cir. 1969).