Anastasios KATRIS a/k/a Stash Katres, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 1356, Docket 77–4072.**

United States Court of Appeals, Second Circuit.

Argued June 20, 1977.

Decided Sept. 7, 1977.

---

David E. Oltarsh, New York City, for petitioner.

Thomas H. Belote, Sp. Asst. U. S. Atty., Southern District of New York (Robert B. Fiske, Jr., U. S. Atty., Robert S. Groban, Jr., Sp. Asst. U. S. Atty., and Patrick H. Barth, Asst. U. S. Atty., Southern District of New York, New York City, of counsel), for respondent.

Before MULLIGAN, GURFEIN and VAN GRAAFEILAND, Circuit Judges.

PER CURIAM:

Petitioner Anastasios Katris seeks review pursuant to § 106(a) of the Immigration and Nationality Act ("the Act"), 8 U.S.C. § 1105a(a), of a final order of deportation entered by the Board of Immigration Appeals on January 28, 1977. The order dis-missed petitioner's appeal from an order and decision of the Immigration Judge which found Katris deportable under § 241(a)(1) of the Act, 8 U.S.C. § 1251(a)(1). The basis for the Immigration Judge's decision was his finding that when Katris entered the United States in September, 1971, he did not have a valid entry document.

The main contention of Katris in this petition is that his arrest was illegal and that evidence thereafter obtained, including his statements at the deportation hearing, should be suppressed as "fruit of the poisonous tree." Because we find this argument and petitioner's other arguments to be without merit, we deny the petition.

I

The facts are not in dispute. Katris is a native and citizen of Greece. He entered the United States in September, 1971 at or near Buffalo, New York. He was brought across the border by an unidentified Greek in the company of two other Greeks who were also illegal aliens. Katris did not possess a valid immigrant visa or other entry document. After working near the border for a week, he moved to Illinois where he worked in a restaurant for his cousin. While in Illinois, he obtained a social security card and a driver's license. Sometime during the summer of 1975, he traveled to New York City and again secured employment as a restaurant worker.

In October, 1975, Katris was arrested in the restaurant where he worked by officers of the Immigration and Naturalization Service.[1] He was released from custody on a $1,000 bond. At this time he was served with an Order to Show Cause why he should not be deported, together with a

---

1. Katris was arrested pursuant to Section 287(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1357(a)(2), which provides in part:

    Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant— . . . to arrest any alien in the United States, if he has reason to believe

    that the alien so arrested is in the United States in violation of any [immigration] law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States.

notice of hearing on the charges.[2] On the day of the hearing, Katris served the government with notice that he would seek to suppress all evidence obtained after his arrest concerning his status as an illegal alien. At the hearing, Katris' counsel conceded the facts alleged in the Order to Show Cause but moved to suppress all the evidence, contending that the arrest of Katris was illegal because it was made without probable cause.

In support of the motion, Katris' counsel offered to prove that INS officers came into the restaurant and asked the owner for his "green card." After the owner showed his card, which identifies an alien as legally present in this country, they secured his permission to question his employees. The people "in the back" all had proper papers. Katris, who was in the front of the restaurant, did not. Although he was then employed at the restaurant, he stated that he was on vacation in New York and showed them his driver's license from Illinois.[3] According to the offer of proof, officers then seized petitioner by the arms, and said, "Come with us. You are under arrest. Down to immigration."

The Immigration Judge denied the motion to suppress without taking any evidence.[4] He found that Katris was a deport-

able alien on the basis of his counsel's concession that the factual allegations in the government's Order to Show Cause were true. Counsel then requested that Katris be granted the privilege of voluntary departure under § 244(e) of the Act, 8 U.S.C. § 1254(e). After appellant, in response to inquiry by the Judge, substantiated the facts alleged in the Order to Show Cause, the Judge denied the request and ordered petitioner deported.[5]

On November 14, 1975, Katris appealed this decision to the Board of Immigration Appeals contending that the Immigration Judge had based his determination upon legally inadmissible evidence and had erred in refusing to allow Katris to testify about the circumstances surrounding his arrest and in refusing to subpoena witnesses at the hearing.[6] On January 28, 1977, the Board dismissed the appeal, and on February 14, 1977, the District Director of the New York Service District Office issued a Warrant of Deportation. On March 21, 1977, Katris filed this petition for review.

## II

The petition centers on Katris' claim that his apprehension was illegal and that the

---

**2.** The order to Show Cause and Notice of Hearing charged that Katris was not a citizen of the United States but a citizen of Greece who had entered the United States without the necessary entry documents as required by Section 212(a)(20) of the Act, 8 U.S.C. § 1182(a)(20). It charged that Katris was therefore subject to deportation under Section 241(a)(1) of the Act, 8 U.S.C. § 1251(a)(1).

**3.** Although his counsel intimated at the deportation hearing that Katris might have appeared to be a restaurant customer, counsel conceded at oral argument and in his brief that Katris "was at work" (p. 6) and "going about his business when the agents came into the restaurant" (p. 11).

**4.** The Immigration Judge found that the offer of proof did not establish "an unlawful stop or unlawful interrogation" but only that "respondent was one of a number of aliens who were subjected to a voluntary interrogation in a restaurant after having spoken to several persons, all of whom proved to be aliens." He concluded that it was not unreasonable for the investigators thereupon to inquire of Katris about his

status. He concluded that, in any event, Katris' admissions during the course of the deportation hearing were sufficient to support the finding of deportability as an "act of free will to purge the primary taint even if it had existed."

**5.** The Immigration Judge denied the request for voluntary departure because he found Katris' testimony concerning his surreptitious entry into this country, especially his inability to identify those persons who assisted him, to be contrived and false. He found petitioner's manner of entry and his immediate employment by a relative to be a "willful and deliberate" violation of the immigration laws. He concluded that to allow Katris voluntarily to depart and to give him three months to remain in this country in order "to get some money to take along" would be to condone his previous improper conduct.

**6.** The "notice" served on the government and presented at the hearing requested the issuance of subpoenas on behalf of Katris.

government should be prohibited from proceeding against him unless it can establish a new and independent basis for proving that he is an illegal alien. Appellant recognizes that this means he could melt into the general populace with a "guarantee of anonymity," in the words of the government. Although the government does not concede that petitioner's arrest was illegal, it argues that whether or not the arrest was lawful is irrelevant to the validity of the deportation proceeding.

During the hearing, Katris conceded the vital elements supporting deportation, that he was not a citizen of the United States, that he had entered illegally with the intention to remain indefinitely and that he did not possess the necessary entry documents. He was, moreover, without an alien registration card—a criminal offense for a lawfully admitted alien—when he was arrested. 8 U.S.C. § 1304(e).

█ Assuming *arguendo* that the arrest was unlawful, it is established in this circuit that the illegal arrest of an alien unlawfully in the United States does not void a subsequent deportation order based on the alien's admission of his status at the hearing. *Avila-Gallegos v. Immigration and Naturalization Service*, 525 F.2d 666 (2d Cir. 1975), relying upon Justice Brandeis' opinion in *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 44 S.Ct. 54, 68 L.Ed. 221 (1923). *See La Franca v. Immigration and Naturalization Service*, 413 F.2d 686, 689 (2d Cir. 1969); *Vlissidis v. Anadell*, 262 F.2d 398, 400 (7th Cir. 1959); *Medeiros v. Brownell*, 99 U.S.App.D.C. 396, 397, 240 F.2d 634, 635 (D.C.Cir. 1957); *Guzman-Flores v. Immigration and Naturalization Service*, 496 F.2d 1245, 1247–48 (7th Cir. 1974). This court has recently followed *Avila-Gallegos* in *Alvarado-Santos v. Immigration and Naturalization Service*, 556 F.2d 554 (2d Cir. 1977) (petition denied from the bench pursuant to § 0.23 of the Rules of the United States Court of Appeals for the Second Circuit).

Although Katris seeks "suppression," there is no evidence to suppress. No statements were made, and no evidence was seized at or after the time of arrest. None was introduced at the deportation hearing. The issue before us is the narrower question whether an illegal arrest would bar any further proceedings against Katris which follow from that arrest. The rule set out in the precedents cited above clearly rejects this contention.[7]

### III

There is one other matter to consider. Counsel for Katris failed to cite *Avila-Gallegos* or to address the line of authority which it followed, although counsel's law firm represented the alien in *Avila-Gallegos* and counsel personally represented the alien in *Alvarado-Santos*. In both cases the aliens challenged their initial apprehensions as Katris did here and sought to terminate the deportation proceedings after conceding illegal entry and deportability. In both cases, the petitions for review were denied. The only reasons advanced by counsel for his omissions were that these decisions were adverse to his position here and that he did not agree with them.

█ An attorney "never ceases to be an officer of the court when serving as a lawyer for a litigant." *United States v. Rodriguez*, 556 F.2d 638, 642 (2d Cir. 1977). He may not file petitions for the sole purpose of delaying the deportation of his client. *Acevedo v. Immigration and Naturalization Service*, 538 F.2d 918, 921 (2d Cir. 1976). Nor may he mislead the court by deliberately failing to cite a controlling adverse decision in a case in which he, himself, participated.[8]

---

7. At the "conclusion" of his brief, Katris requests that he be granted the privilege of voluntary departure. He gives no reason why the decision of the Attorney General, who has wide discretion in these matters, *see, e. g., Strantzalis v. Immigration and Naturalization Service*, 465 F.2d 1016, 1017 (3d Cir. 1972), should be disturbed. We find no merit in the request and no abuse of discretion by the Attorney General.

8. *Avila-Gallegos, supra*, was decided November 7, 1975. Thereafter, counsel's firm continued to file motions in deportation proceedings alleging that allegedly unlawful arrests voided

Though we recognize that counsel has a duty to "represent his client zealously", Canon EC 7–1, *Code of Professional Responsibility*, his conduct here was not within the proper bounds of zealous representation. We agree with the government therefore, that sanctions against the attorney are called for, as in *Acevedo, supra.* 28 U.S.C. § 1912; Fed.R.App.P. 38 (made applicable to this petition for review by Fed.R.App.P. 20).

The petition for review is denied. Costs are taxed against counsel for petitioner.

the proceedings. *See, e. g., In the Matter of Juan Urla-Mayen*, No. A21609757, Jan. 23, 1976; *In the Matter of Tsai Fu Chen*, No. A21067600, Dec. 15, 1975. The filing of peti-

tions such as these delay deportation of the petitioners because of the automatic stay of deportation pending review granted by 8 U.S.C. § 1105a(a)(3).