13-749-ag
*Vanegas-Ramirez v. Holder*

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2013

(Argued:  May 27, 2014                    Decided:   September 25, 2014)

Docket No. 13-749-ag

─────────────────────────

LUIS ESTUARDO VANEGAS-RAMIREZ,

*Petitioner*,

– v. –

ERIC H. HOLDER, JR., UNITED STATES ATTORNEY GENERAL,

*Respondent*.

─────────────────────────

Before: LIVINGSTON, DRONEY, *Circuit Judges*, CHEN, *District Judge*. *

Luis Estuardo Vanegas-Ramirez petitions for review of a February 4,

2013 decision by the Board of Immigration Appeals substantially affirming

---

*       The Honorable Pamela K. Chen, of the United States District Court for the Eastern District of New York, sitting by designation.

the Immigration Judge's decisions denying Vanegas-Ramirez's motion to suppress evidence and terminate removal proceedings, and his application for asylum, withholding of removal, and protection under the Convention Against Torture. Because Vanegas-Ramirez voluntarily conceded his removability in a motion to change venue, the Board of Immigration Appeals did not err in denying the suppression motion, and, because Vanegas-Ramirez's testimony was insufficient to establish a well-founded fear of persecution, the Board of Immigration Appeals also did not err in denying the asylum application. Accordingly, we DENY Vanegas-Ramirez's petition.

BRUNO J. BEMBI, Law Office of Bruno J. Bembi, Hempstead, New York, *for Petitioner*.

JESSE M. BLESS, Trial Attorney, Office of Immigration Litigation, Civil Division (Stuart F. Delery and David V. Bernal, *on the brief*), United States Department of Justice, Washington, District of Columbia, *for Respondent*.

_____

CHEN, *District Judge*:

Petitioner Luis Estuardo Vanegas-Ramirez was arrested and detained for removal from the United States during an early morning raid by federal agents, which uncovered evidence of Vanegas-Ramirez's Guatemalan citizenship. After being transferred from New York, where he had been residing, Vanegas-Ramirez was scheduled to appear for removal proceedings in Texas. Vanegas-Ramirez moved to change the venue of the removal proceedings to New York. In his motion, Vanegas-Ramirez voluntarily conceded his removability from the United States.[1]

Vanegas-Ramirez's venue change motion was granted, and the removal proceedings against him were transferred to New York. During these proceedings, Vanegas-Ramirez (i) moved to suppress all evidence of his removability, *including* the concessions of removability that he had made in his venue change motion, and to terminate these proceedings, both on the basis that the raid by federal agents violated the Fourth and

---

[1] Ordinarily, in removal proceedings, the government bears the initial, but limited, burden of proving an individual's removability by establishing his "identity and alienage," whereupon the burden shifts to the individual to establish the "time, place, and manner of his entry." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984).

Fifth Amendments (the "suppression motion"); and (ii) applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") (the "asylum application"). The Immigration Judge (the "IJ") denied both Vanegas-Ramirez's suppression motion and asylum application, and the Board of Immigration Appeals (the "BIA") substantially affirmed. Vanegas-Ramirez now petitions us to review the BIA's decision or, more accurately, the agency's decision.[2]

In considering the petition, we revisit an important legal question: if the government initiates proceedings to remove an alien from the United States following an egregious Fourth Amendment violation, do the alien's concessions of removability made during the removal proceedings constitute *independent*, or *sufficiently attenuated*, evidence of removability that is *admissible* in these proceedings, or do they constitute *inadmissible* *"fruit"* of the illegal search and seizure? In this case, we affirm the

[2]    In this case, because the BIA's decision both "affirms . . . in all respects but one" and "supplements" the IJ's decisions, we review the IJ's decisions, as modified and supplemented by the BIA's decision. *Chen v. BIA*, 435 F.3d 141, 144 (2d Cir. 2006). The BIA and Immigration Courts belong to the Executive Office for Immigration Review, a separate agency within the Department of Justice. *See* About the Office, EOIR, http://www. justice.gov/eoir/orginfo.htm (last visited September 25, 2014).

4

principle that where, as here, an alien *voluntarily*, *i.e.*, not under compulsion of law, concedes facts supporting his removability, such concessions constitute independently admissible removability evidence, notwithstanding the allegedly egregious and illegal search and seizure that led to the initiation of the removal proceedings. *See Katris v. INS*, 562 F.2d 866, 869 (2d Cir. 1977) (per curiam); *Avila-Gallegos v. INS*, 525 F.2d 666, 667 (2d Cir. 1975); *La Franca v. INS*, 413 F.2d 686, 689 (2d Cir. 1969).

For the reasons set forth below, we deny Vanegas-Ramirez's petition to review the agency's decision.

BACKGROUND[3]

**I.      The Government Raid & Filing of Removal Proceedings**

On September 24, 2007, Vanegas-Ramirez was temporarily staying with his relatives at a house in Levittown, New York.[4]  According to Vanegas-Ramirez, at approximately 6:00 AM, agents from the Federal Bureau of Investigation and Immigration and Customs Enforcement ("ICE")[5] raided the house.

---

[3]      "CAR" denotes the Certified Administrative Record.

[4]      Vanegas-Ramirez's actual residence was in Uniondale, New York.

[5]      ICE is the main investigative arm of the Department of Homeland Security ("DHS").

Vanegas-Ramirez testified that, upon entering the house,[6] the agents began searching the rooms. During the search, the agents barged through the closed door of Vanegas-Ramirez's room, ordered Vanegas-Ramirez to freeze, and interrogated him for 15 minutes at gunpoint. The agents brought Vanegas-Ramirez out to the living room, where they were questioning other occupants of the house. An ICE agent informed Vanegas-Ramirez that he and two other occupants were being arrested for lack of documentation. Vanegas-Ramirez, at some point, presented and then surrendered to the agents his Guatemalan consular identification card.

The same day, ICE agents arrested Vanegas-Ramirez and transported him to their field office in New York City for processing. At that time, an agent, using a Spanish-language interpreter, read Vanegas-Ramirez his Miranda rights and took his sworn statement, which indicated, among other things, that Vanegas-Ramirez (i) was a "citizen of

---

[6] According to Vanegas-Ramirez, the agents gained entry to the house without a warrant by holding his cousin at gunpoint. The IJ, however, discredited these parts of Vanegas-Ramirez's testimony as "pure speculation," given that Vanegas-Ramirez did not have any relevant firsthand knowledge. CAR at 261-62.

Guatemala" and (ii) had "entered the United States [in] or about July 2002, near the Phoenix, AZ U.S.-Mexican border" illegally and without inspection. CAR at 219. Vanegas-Ramirez was eventually transported from New York to ICE detention centers in Texas.

On October 18, 2007, DHS filed a notice for Vanegas-Ramirez to appear for removal proceedings before IJ Eleazar Tovar ("IJ Tovar") in Texas.[7] In the notice, DHS alleged, among other things, that Vanegas-Ramirez was a "citizen of Guatemala" and not the United States, and that he had come to this country "at a time or place other than as designated by the Attorney General." *Id.* at 333. IJ Tovar thereafter arranged for a Master hearing[8] to be held on December 6, 2007.

---

[7] "Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a). "Venue shall lie at the Immigration Court where jurisdiction vests pursuant to § 1003.14." *Id.* § 1003.20(a); *see also Lovell v. INS*, 52 F.3d 458, 461 (2d Cir. 1995) (explaining that a change of venue in immigration proceedings is neither a fundamental nor constitutional right).

[8] A Master hearing is typically the "first appearance before an Immigration Judge in removal proceedings" by an individual to be removed. Immigration Court Practice Manual § 4.15(a) (2013) (p. 67), *available at* http://www.justice.gov/eoir/vll/OCIJPracManual/Practice_Manual_1-27-14.pdf; *see also In re Cordova*, 22 I. & N. Dec. 966, 968 (BIA

7

On October 30, 2007, however, DHS released Vanegas-Ramirez from detention on a $6,000 bond, whereupon he moved back to his residence in Uniondale, New York.

**II.     Venue Change Motion**

On November 26, 2007, Vanegas-Ramirez moved to change the venue of the removal proceedings from Texas to New York.  As part of his motion, Vanegas-Ramirez attached a declaration, in which, among other things, he conceded his removability by acknowledging that he was a "native and citizen of Guatemala" and "not a citizen of the United States," and that he had not been "inspected or paroled by an Immigration Officer at the time that [he] entered the United States."  *Id.* at 252.   Indeed, Vanegas-Ramirez explicitly conceded his removability:

> I admit that *I am removable* from the United States under section 212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that I am an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

1999) (describing a "master calendar hearing," even though "[n]either [the Immigration and Nationality Act] nor the regulations define" the hearing).

8

*Id.* (emphasis added).[9] Vanegas-Ramirez signed and certified that the statements contained in his declaration were true.

On December 4, 2007, IJ Tovar ordered the transfer of the removal proceedings against Vanegas-Ramirez to New York without a hearing. These proceedings ultimately came before IJ Philip Morace ("IJ Morace") in New York.

### III. Suppression Motion

On July 3, 2008, Vanegas-Ramirez filed the suppression motion, alleging that the government raid was an egregious violation of the Fourth and Fifth Amendments and, thus, required IJ Morace to exclude all evidence of Vanegas-Ramirez's removability and terminate his removal proceedings.[10]

---

[9] Vanegas-Ramirez's declaration also contained statements relating to the requested venue change, *e.g.*, that Vanegas-Ramirez (i) resided in New York; (ii) was originally detained in New York; (iii) retained counsel in New York; (iv) received support from his friends and relatives in New York; and (v) did not plan to call any government employees as witnesses during the removal proceedings.

[10] Notably, Vanegas-Ramirez did not move to suppress on the basis of "any egregious circumstances concerning the admissions in the documents submitted for the change of venue." Pet'r Br. at 10; *see also In re Velasquez*, 19 I. & N. Dec. 377, 382-83 (BIA 1986) (noting that an alien may challenge his attorney's concessions of removability only in "egregious circumstances," *e.g.*, "unreasonable professional judgment").

9

On May 4, 2010, a hearing on the suppression motion was held. At the hearing, counsel for Vanegas-Ramirez argued that "the evidence that was obtained concerning [Vanegas-Ramirez's] status was basically a fruit of the poisonous tree,"[11] based on the government raid and the fact that "anything else that followed after that was the result of egregious circumstances." *Id.* at 121.

IJ Morace orally denied the suppression motion on two separate grounds: (i) the government raid was not such an egregious violation of, what he termed, "fundamental fairness"; and (ii) notwithstanding the egregiousness issue, Vanegas-Ramirez's declaration to his venue change motion furnished evidence of removability that was independent from the government raid. *Id.* at 255-58, 261-63.

## IV. Asylum Application

On July 8, 2010, Vanegas-Ramirez filed the application for asylum and withholding of removal based on an alleged fear of persecution for his

---

[11] As a historical note, the "fruit of the poisonous tree" metaphor first appeared in *Nardone v. United States*, 308 U.S. 338, 341 (1939). The metaphor's precise origin, however, is unclear, but one legal scholar has suggested a "biblical connection to the parable of the Garden of Eden." Thomas Ross, *Metaphor & Paradox*, 23 Ga. L. Rev. 1053, 1054-55, 1068 (1989).

membership in a particular social group,[12] *i.e.*, the Vanegas family, and for CAT protection.

According to Vanegas-Ramirez, his father, Carlos Vanegas ("Carlos"), was targeted by two groups in Guatemala: (i) a vengeful prisoner named "Manuel," whom Carlos had put behind bars in Melchor de Mencos, and Manuel's family; and (ii) covetous merchants in Guatemala City, whose businesses competed with Carlos's.

With respect to the prisoner, Manuel, and Manuel's family, Vanegas-Ramirez alleged that:

- In 1987, there was a single incident in Melchor de Mencos, where the "same man that my father arrested [*i.e.*, Manuel]," following his release, stabbed Carlos at a party, and another partygoer killed Manuel;

---

[12] The asylum application also purported to seek asylum and withholding of removal based on Vanegas-Ramirez's political opinion, but, as the BIA pointed out, he never asserted a claim on that basis to IJ Morace *or* the Board. Even on appeal, Vanegas-Ramirez frames his asylum request as entirely "based upon *membership in a particular social group*" and not political opinion. Pet'r Br. at 2 (emphasis added). We decline to consider political opinion as a basis now. *See Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 107 n.1 (2d Cir. 2007) ("[A] failure to exhaust an issue before the agency . . . is sufficient ground for the reviewing court to refuse to consider that issue."); *Zhang v. Gonzales*, 426 F.3d 540, 545 n.7 (2d Cir. 2005) (deeming "abandoned" a claim of asylum based on "political activities," where the petitioner "devotes only a single conclusory sentence" to it on appeal).

11

- Manuel's family blamed Carlos for the death of Manuel, and set out to find, but never actually attempted to take revenge against, the Vanegas family;

- In 1990, the Vanegas family moved to Jutiapa to get away from Manuel's family and, after several years of hiding, Carlos started his own business in Guatemala City;

- Later, in 2002, "several individuals," who Carlos "believes" were members of Manuel's family, beat Carlos at a bus station, poisoned him, and put him in a month-long coma; and

- Friends of the Vanegas family told them that Manuel's family is "still inquiring about our whereabouts" back in Melchor de Mencos.

*Id.* at 160-61.

With respect to the other merchants, Vanegas-Ramirez alleged that:

- The other merchants "became jealous" of Carlos's business in Guatemala City; and

- In the beginning of 2002, Carlos was robbed and nearly killed by "two individuals" at his business, "[w]hen his problems with the other merchants began."

*Id.* at 160.

At the May 9, 2011 hearing on the asylum application, Vanegas-Ramirez further alleged that the same groups that had targeted Carlos would likely try to kill him, "*if* they come looking for me." *Id.* at 144 (emphasis added). At the conclusion of the hearing, IJ Morace orally denied Vanegas-Ramirez's requests for asylum and withholding of

12

removal, stating that Vanegas-Ramirez's testimony, while credible, lacked sufficient "details and specifics" about his alleged persecutors to establish a well-founded fear of being persecuted for membership in the Vanegas family, and that the "documentary evidence" that Vanegas-Ramirez submitted in support of his testimony was "very sparse." *Id.* at 70-71, 73-75. IJ Morace also denied Vanegas-Ramirez's request for CAT protection.

**V.     The BIA's Decision**

On February 4, 2013, the BIA affirmed IJ Morace's May 4, 2010 decision denying the suppression motion, on the ground that Vanegas-Ramirez's declaration in support of his venue change motion independently established his removability. The BIA accordingly declined to reach the issue of whether the government raid was egregious.

The BIA also affirmed IJ Morace's May 9, 2011 decision to deny the asylum application on both grounds relied upon by the IJ, *i.e.*, that Vanegas-Ramirez had not testified in sufficient factual detail to prove his entitlement to such relief, and that he failed to provide enough documentary evidence to support his requests for relief.

13

**DISCUSSION**

**I.  Standard of Review**

"It is well-settled that we review the factual findings of [the agency] for substantial evidence.  It is equally well-settled that, on appeal, issues of law are reviewed *de novo*."  *Almeida-Amaral v. Gonzales*, 461 F.3d 231, 233-34 (2d Cir. 2006) (citations omitted).  While this Court has eschewed precise formulations of the substantial evidence standard for reviewing the agency's factual findings, it has suggested that this standard is equal to, or stricter than, the clear error standard for reviewing a district court's factual findings.  *Mei Chai Ye v. U.S. Dep't of Justice*, 489 F.3d 517, 523 n.4 (2d Cir. 2007); *see also* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary[.]").

**II.  Denial of the Suppression Motion**

The main issue on appeal is the agency's denial of the suppression motion based on the admissibility of Vanegas-Ramirez's concessions of removability in his venue change motion as independent evidence.[13]

---

[13]  Because the BIA declined to affirm the IJ's decision on the basis of his finding that the government raid was not an egregious violation of the Constitution, we assume, in deciding the independent evidence issue, that

14

Vanegas-Ramirez contends now, as he did before the agency, that his concessions of removability were inadmissible as "fruit" of an illegal search and seizure by the government. We need not reach the issue of whether Vanegas-Ramirez has established an egregious Fourth Amendment violation, because, even assuming so for the sake of argument, his argument must be rejected based on this Court's clear precedent and the facts before us.

In *Lopez-Mendoza*, the Supreme Court held that the exclusionary rule, applied in criminal proceedings, does not apply in *civil* removal proceedings. 468 U.S. at 1034, 1050. The Court, however, in dicta, suggested that removability evidence *is* subject to exclusion if it stems from "*egregious* violations of Fourth Amendment or other liberties." *Id.* at 1050-51 (emphasis added).[14] At the same time, the Court also suggested

the raid was, in fact, egregious. *See Pretzantzin v. Holder*, 736 F.3d 641, 646, 651 (2d Cir. 2013) (noting that "the BIA did not reach the question of whether there was an egregious violation of the Fourth Amendment," and considering the independent evidence issue, on the assumption that the petitioners "established a *prima facie* case for suppression"); *cf. Chen*, 435 F.3d at 144 ("When the BIA affirms the IJ's decision in all respects but one, we review the IJ's decision as modified by the BIA decision[.]").

[14] In *Almeida-Amaral*, this Court interpreted *Lopez-Mendoza*'s reference to "egregious violations" as encompassing (i) violations that are "gross or

that, "regardless of how the arrest is effected," the removal of an individual could still be supported by otherwise admissible "evidence *not derived directly* from," but rather "*gathered independently* of, or *sufficiently attenuated* from," the arrest. *Id.* at 1043 (emphases added).

Recently, this Court, in *Pretzantzin*, addressed the issue of independent, or sufficiently attenuated, evidence in removal proceedings. 736 F.3d at 651-52. The removability evidence at issue in *Pretzantzin* was birth certificates and arrest records for the petitioners, which the government had acquired from the United States Embassy and municipal transit police department, after raiding the petitioners' home. *Id.* at 644-45, 651-52. This Court held that, if the "nighttime, warrantless raid" of a home were an egregious Fourth Amendment violation, evidence "come at by exploitation of that illegality" would have to be excluded. *Id*. at 646, 651-52 (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)) (internal quotation marks omitted). Such evidence would include not only evidence obtained during the violation itself, but evidence obtained *based on* other

unreasonable in addition to being without a plausible legal ground," and (ii) violations "based on race." *Almeida-Amaral*, 461 F.3d at 236-37. As stated above, however, the egregiousness of the government raid in this case is not an issue on appeal.

information obtained during the violation. *Id.* at 651-52.[15] Accordingly, this Court found that the BIA erred by admitting the petitioners' birth certificates and arrest records as independent evidence, absent proof that the government had procured the evidence "using only their names" and nothing else from the raid. *Id.*

*Pretzantzin*, however, is distinguishable from this case. Vanegas-Ramirez's concessions of removability did not derive from the "exploitation" of the presumptively illegal government raid, *Pretzantzin*, 736 F.3d at 651, but, rather, from the "mere fact" that the raid had occurred, *Lopez-Mendoza*, 468 U.S. at 1040. Vanegas-Ramirez's concessions of removability, while obtained during removal proceedings commenced after the unlawful raid, were not obtained using other information *obtained during the raid*.[16] Instead, the concessions were the product of a tactical

---

[15]   *Cf. Segura v. United States*, 468 U.S. 796, 804 (1984) ("[T]he exclusionary rule reaches not only *primary evidence obtained as a direct result* of an illegal search or seizure, but also *evidence later discovered and found to be derivative* of an illegality or 'fruit of the poisonous tree.'") (emphases added; citations omitted) (quoting *Nardone*, 308 U.S. at 341).

[16]   To categorically exclude all removability evidence that arises during the course of removal proceedings, which are precipitated by illegal searches and seizures, would contravene the basic principle that "an individual cannot escape a tribunal's power over his 'body' despite being

17

decision by Vanegas-Ramirez to avoid a hearing on his venue change motion.

In making his venue change motion, Vanegas-Ramirez was only required to (i) establish "good cause" for granting the motion, and (ii) identify his "fixed street address, including city, state and ZIP code, where [he] may be reached for further hearing notification." 8 C.F.R. § 1003.20(b), (c). To establish "good cause," Vanegas-Ramirez could have cited any number of the following discretionary factors: "administrative convenience, [his] residence, the location of witnesses, evidence and counsel, expeditious treatment of the case, and the cost of transporting witnesses and evidence to a new location." *Lovell*, 52 F.3d at 460. Removability was not one of these factors.

As Vanegas-Ramirez's counsel acknowledged to us at oral argument, Vanegas-Ramirez was not legally required to concede removability as part of his venue change motion, but did so believing it

subject to an illegal seizure en route to the courthouse," in this case, for removal proceedings. *Pretzantzin*, 736 F.3d at 650; *see also Lopez-Mendoza*, 468 U.S. at 1039 ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred.").

18

would increase the likelihood of his motion being granted *without* a hearing. *Cf. In re Velasquez*, 19 I. & N. Dec. at 382-83 (noting that "admissions of fact and concession of deportability in the motion for change of venue" are a "tactical decision," and conceding removability could "heighten the chance that [the government] would not oppose a change of venue"); *Gawel v. INS*, No. 93-3622, 1994 WL 405763, at *2 (7th Cir. Aug. 3, 1994) (unpublished) (suggesting that concessions of removability in a venue change motion might indirectly show the IJ that removal proceedings would be "expeditious" and not impose a burdensome "cost of transporting evidence and witnesses" to otherwise prove removability). In short, there was no legal requirement, only a strategic choice, for Vanegas-Ramirez to concede his removability. Consequently, the concern in *Pretzantzin* about the admission of evidence directly derived from an egregious Fourth Amendment violation is not present here.[17]

---

[17] Vanegas-Ramirez was not under oath at the time he conceded removability in his venue change motion. Shortly *after* Vanegas-Ramirez made his venue change motion, the Department of Justice instituted a new policy with respect to such motions, indicating that they "should contain . . . an *admission or denial of the factual allegations and charge(s) in the Notice to Appear*," which includes allegations of removability. Immigration

In contrast to *Pretzantzin*, three decisions from this Court—*Katris*, *Avila-Gallegos*, and *La Franca*—are on all fours with this case.[18] In that trio of cases, this Court held that an alien's voluntary concessions of removability during his removal proceedings are admissible as independent evidence, notwithstanding the fact that these proceedings resulted from unlawful arrests. *See Katris*, 562 F.2d at 867-69 (rejecting the petitioner's argument that "evidence . . . obtained [following his unlawful arrest], *including his statements at the deportation hearing*, should be suppressed as 'fruit of the poisonous tree,'" because the illegality "d[id] not void a subsequent deportation order based on the alien's admission of

Court Practice Manual § 5.10(c) (p. 101) (emphasis added); *see* Operating Policies and Procedures Memorandum 08-03 (Amended): Application of the Immigration Court Practice Manual to Pending Cases 2 & n.2 (June 20, 2008), *available at* http://www.justice.gov/eoir/vll/OCIJPracManual/08-03.pdf (citing an effective date of July 1, 2008). The manual does not indicate whether the admissions or denials of removability in venue change motions must be made under penalty of perjury. Because the manual was not in effect when Vanegas-Ramirez filed his venue change motion, we need not address the effect of the manual, if any, on proceedings subject to its provisions.

[18] These decisions, which pre-date *Lopez-Mendoza*, remain good law because *Lopez-Mendoza*, as interpreted by *Almeida-Amaral*, merely defined the egregiousness standard for exclusion in removal proceedings, and did not otherwise re-define the independent evidence standard. *Almeida-Amaral*, 461 F.3d at 236-37.

20

his status at the hearing") (emphasis added);[19] *Avila-Gallegos*, 525 F.2d at 666-67 (holding that, "[r]egardless of the legality of [the petitioner's] arrest," his "deportation hearing testimony" about the "illegal manner of his entry" was admissible and, indeed, proved his deportability); *La Franca*, 413 F.2d at 688-89 (finding that the agency properly refused to reopen the petitioner's deportation hearing, based, in part, on the fact that, even assuming the unlawfulness of his arrest, it relied upon the concession of deportability by his counsel at the hearing and not "any statements taken or evidence seized at the time of his arrest").[20] That is because these concessions are not "fruit" of the illegality, but of an intervening "act of free will," *i.e.*, an alien's own choice to concede his removability. *Katris*, 562 F.2d at 867, 868 n.4 (internal quotation marks omitted). It is this intervening act that "purge[s] the primary taint." *Id.* (internal quotation

[19] The terms, "deportation hearing" and "removal proceeding," are synonymous. *See Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 33 n.1 (2006) (stating that "[w]hat was formerly known as 'deportation' is now called 'removal'" following the Illegal Immigration Reform and Immigrant Responsibility Act of 1996).

[20] *Accord In re Velasquez*, 19 I. & N. Dec. at 380 ("Since [the venue change motion conceding removability] was filed well after the respondent's arrest, this motion is not tainted by any violations of the fourth or fifth amendments that may have occurred at the time of the respondent's arrest.").

marks omitted). The same reasoning applies here, and dictates that the agency's decision should be affirmed.[21]

Accordingly, we conclude that the agency did not err by denying the suppression motion on the basis that Vanegas-Ramirez's concessions of removability constituted independently admissible evidence.

### III. Denial of the Asylum Application

The other issue on appeal is whether the agency properly denied Vanegas-Ramirez's requests for asylum and withholding of removal, based on its finding that his testimony did not show a well-founded fear of

---

[21] While the exclusionary rule does not apply to removal proceedings, *supra*, the Supreme Court's opinions on "independent source," or "sufficiently attenuated," evidence, in the context of that rule, are also instructive. *E.g.*, *New York v. Harris*, 495 U.S. 14, 19 (1990) (considering "whether the 'taint' of the Fourth Amendment violation was sufficiently attenuated to permit the introduction of the evidence") (quoting *United States v. Crews*, 445 U.S. 463, 471 (1980)); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920) ("If knowledge of [facts] is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it in the way proposed."). In *Harris*, the warrantless arrest of the defendant at home was deemed unlawful. 495 U.S. at 17. Nonetheless, the Supreme Court held that the defendant's subsequent "written statement made at the station house," without any "coercion," was not an "exploitation of the illegal entry into [his] home." *Id.* at 16, 19-20. The statement, therefore, sidestepped the exclusionary rule. *Id.* at 21. If a voluntary, post-arrest statement *at the station house* avoids exclusion in criminal proceedings, a similar statement *before an IJ*, like Vanegas-Ramirez's, should avoid exclusion in removal proceedings.

22

persecution and, alternatively, that he provided insufficient documentary evidence to support his testimony.[22]

Asylum and withholding of removal are "two alternative forms of relief" available to an alien claiming that he will be persecuted, if removed back to his native country. *Melgar de Torres v. Reno*, 191 F.3d 307, 311 (2d Cir. 1999). The former is discretionary, and the latter is not. *Compare* 8 U.S.C. § 1158(b)(1)(A) ("may grant asylum"), *with id.* § 1231(b)(3)(A) ("may not remove"). *See also Yang v. Gonzales*, 478 F.3d 133, 141 (2d Cir. 2007) ("Once the [requisite] showing is made, withholding of removal is mandatory, whereas asylum may be refused to an eligible petitioner in the discretion of the Attorney General.").

To be eligible for asylum, the alien must show that he is a "refugee"—that is, someone who is "unable or unwilling" to return to his native country "because of *[past] persecution or a well-founded fear of [future] persecution* on account of race, religion, nationality, membership in a

---

[22] Because Vanegas-Ramirez does not challenge the agency's denial of CAT protection, we do not review it. *See Zhang*, 426 F.3d at 545 n.7 (considering claims with respect to an asylum application to be waived where they are not adequately briefed).

23

particular social group, or political opinion."[23]  8 U.S.C. § 1101(a)(42) (emphasis added); *see also id.* § 1158(b)(1)(A); *Diallo v. INS*, 232 F.3d 279, 284 (2d Cir. 2000).  The alien's membership in his family may, in fact, constitute a "social-group basis of persecution" against him.  *Vumi v. Gonzales*, 502 F.3d 150, 155 (2d Cir. 2007).

Eligibility for withholding of removal, however, requires a "clear probability of persecution," *i.e.*, "it is more likely than not that the alien would be subject to persecution."  *INS v. Stevic*, 467 U.S. 407, 413, 424 (1984).  The "clear probability" standard is higher than the "well-founded fear" standard.  *Paul v. Gonzales*, 444 F.3d 148, 155 (2d Cir. 2006) ("It is well-settled that the burden of proof for a withholding of removal claim is higher than the burden of proof for an asylum claim.").  As a result, "an

---

[23]    This case does not involve "past persecution," because Vanegas-Ramirez never alleged that he personally suffered persecution, but rather only that his father, Carlos, was injured on several discrete occasions. *See Melgar de Torres*, 191 F.3d at 313 n.2 ("Although persecution of close family members may support a well-founded fear of future persecution, it does not form the basis for a finding of past persecution of [the petitioner]."). *Compare also Jiang v. Gonzales*, 500 F.3d 137, 139, 141-42 (2d Cir. 2007) (forced sterilization of the petitioner's mother, three months after he was born, did not constitute past persecution of the petitioner), *with Jorge-Tzoc v. Gonzales*, 435 F.3d 146, 150 (2d Cir. 2006) (per curiam) ("pervasive" massacres of Mayans where the petitioner lived when he was a child could evidence his past persecution).

24

applicant who fails to establish [his] eligibility for asylum necessarily fails to establish eligibility for withholding of removal." *Yan Juan Chen v. Holder*, 658 F.3d 246, 254 (2d Cir. 2011) (per curiam) (internal quotation marks omitted).

A "well-founded fear" means that "a reasonable person in [the alien's] circumstances would fear persecution if [he] were to be returned to [his] native country." *Carcamo-Flores v. INS*, 805 F.2d 60, 68 (2d Cir. 1986) (internal quotation marks omitted). "The term 'well-founded fear' implies both a subjective and an objective element. [The alien] must first establish the *subjective* element," *i.e.*, that he *has* a fear of persecution. *Id.* at 64 (emphasis added). "To make that fear well-founded and thereby qualify for asylum, however, the alien must also demonstrate that there are *objective* facts supporting that fear." *Id.* (emphasis added).

Once the alien has established that he subjectively fears persecution,[24] he may establish the objective facts to support his fear through "affidavits, journalistic accounts of other examples of persecution

---

[24] In this case, neither the IJ, nor the BIA, disputed that Vanegas-Ramirez had established the subjective element of a well-founded fear of persecution.

25

in the involved country, or testimony," among other things. *Id.* "In the absence of documentary proof, [the alien's] testimony will be enough *if it is credible, persuasive, and refers to specific facts*[.]" *Melendez v. U.S. Dep't of Justice*, 926 F.2d 211, 215 (2d Cir. 1991) (emphasis added; internal quotation marks omitted). Even if the testimony is "credible and detailed" enough, it is not always "automatically sufficient," such that other documentary evidence "can never be required." *Diallo*, 232 F.3d at 286; *see also* 8 U.S.C. § 1158(b)(1)(B)(ii) (providing that "evidence that corroborates otherwise credible testimony" may also be required, "unless the applicant does not have the evidence and cannot reasonably obtain the evidence").

Here, the only evidence that Vanegas-Ramirez offered at his removal proceedings in support of the asylum application was his own testimony. Vanegas-Ramirez testified that, in 1987, his father, Carlos, was attacked by the now-deceased prisoner, Manuel, who, along with his surviving family, had a vendetta against Carlos. Vanegas-Ramirez also testified that, in 2002, Carlos was attacked by unnamed individuals, whom Carlos believed were members of Manuel's family. However, Vanegas-

Ramirez offered no evidence beyond his father's belief that this attack had any connection to Manuel's family.[25]

Vanegas-Ramirez's testimony is insufficient, at a minimum, to establish the objective element of a well-founded fear of persecution. *See Carcamo-Flores*, 805 F.2d at 64. Even accepting the truth of the testimony, it only identifies a single, decades-old attack on Carlos by Vanegas-Ramirez's would-be persecutors, *i.e.*, Manuel's family, and an unsubstantiated belief that a 2002 attack was also perpetrated by Manuel's family. These incidents hardly support a well-founded fear that Manuel's family will persecute Vanegas-Ramirez in the future.[26] *See Melgar de Torres*, 191 F.3d at 313 (holding that the death of the petitioner's uncle for assisting an El Salvadorian guerrilla group did not establish a "well-founded fear of persecution on account of her uncle's actions," where no other "members of her uncle's family" were persecuted thereafter).

---

[25] Vanegas-Ramirez also testified that his father was the victim of another attack in 2002 at a time when Carlos allegedly was having "problems with the other merchants." CAR at 160. However, Vanegas-Ramirez offered no testimony or other evidence that this attack was perpetrated or caused by the other merchants.

[26] The minimal threat posed by Manuel's family is further suggested by Vanegas-Ramirez's own testimony that these individuals would try to kill him, "*if* they come looking for me." CAR at 144 (emphasis added).

27

No "reasonable person" in Vanegas-Ramirez's "circumstances" would fear persecution if he were returned to Guatemala. *Carcamo-Flores*, 805 F.2d at 68 (internal quotation marks omitted). The agency's finding, therefore, that the testimony of Vanegas-Ramirez was not factually "specific" enough to establish a well-founded fear of persecution was amply supported by the record. *Melendez*, 926 F.2d at 215 ("In the absence of documentary proof, [the alien's] testimony will be enough *if it is credible, persuasive, and refers to specific facts*[.]") (emphasis added; internal quotation marks omitted); *see also* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary[.]"); *Almeida-Amaral*, 461 F.3d at 233 (holding that the agency's factual findings are reviewed for substantial evidence).

Accordingly, we conclude that the agency did not err by denying the asylum application based on the failure of Vanegas-Ramirez's testimony to establish a "well-founded" fear and, by extension, a "clear probability" of persecution.

**CONCLUSION**

Therefore, we affirm the agency's decision and deny Vanegas-Ramirez's petition.