Singh v. Bondi

BIA
Cortes, IJ
A215 679 717

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of March, two thousand twenty-six.

PRESENT:
> JOHN M. WALKER, JR.,
> RAYMOND J. LOHIER, JR.,
> MYRNA PÉREZ,
> *Circuit Judges.*

_____

SUKHJINDER SINGH,
> *Petitioner,*

> v.                                                              23-7361
>                                                                 NAC

PAMELA BONDI, UNITED STATES
ATTORNEY GENERAL,
> *Respondent.*

_____

FOR PETITIONER:          Heena Arora, Esq., Law Offices of Heena Arora, P.C., Jamaica, NY.

**FOR RESPONDENT:** Brian M. Boynton, Principal Deputy Assistant Attorney General; Julie M. Iversen, Senior Litigation Counsel; Lynda A. Do, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Sukhjinder Singh, a native and citizen of India, seeks review of a September 18, 2023 decision of the BIA affirming an October 23, 2019 decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Sukhjinder Singh*, No. A 215 679 717 (B.I.A. Sept. 18, 2023), *aff'g* No. A 215 679 717 (Immig. Ct. N.Y. City Oct. 23, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed the IJ's decision as modified and supplemented by the BIA. *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005); *Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). Thus, the only issues before us are the grounds that the BIA relied on—that Singh could relocate to avoid

persecution and that he did not show he would more likely than not be tortured.[1]

We review the agency's "legal conclusions *de novo*, and its factual findings . . . under the substantial evidence standard." *Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013) (quotation marks omitted). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## I.     Asylum and Withholding of Removal

Asylum is a form of discretionary relief available to an applicant unable or unwilling to return to his country of nationality because of past persecution or a well-founded fear of future persecution on account of a protected ground (here, political opinion). 8 U.S.C. §§ 1101(a)(42), 1158(b). Withholding of removal is a similar form of relief that is mandatory if the applicant demonstrates that he will more likely than not be persecuted on account of a protected ground. 8 U.S.C. § 1231(b)(3)(A); *Singh v. Garland*, 11 F.4th 106, 114 (2d Cir. 2021).

The standard for withholding of removal is higher than the "well-founded

---

[1] Singh's arguments about issues the BIA did not reach are misplaced and not properly before us. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

3

fear" standard required for asylum. *Vanegas-Ramirez v. Holder*, 768 F.3d 226, 237 (2d Cir. 2014). As a result, "an applicant who fails to establish [his] eligibility for asylum necessarily fails to establish eligibility for withholding of removal." *Yan Juan Chen v. Holder*, 658 F.3d 246, 254 (2d Cir. 2011) (per curiam) (internal quotation marks omitted).

We begin with Singh's asylum claim. An applicant's fear of future persecution for asylum may be rebutted if the government establishes, by a preponderance of the evidence, that "[t]he applicant could avoid future persecution by relocating to another part of the applicant's country of nationality . . . and under all the circumstances, it would be reasonable to expect the applicant to do so." 8 C.F.R. §§ 1208.13(b)(1)(i)(B) (asylum), 1208.16(b)(1)(i)(B) (withholding).[2]

Here, the BIA found that, even assuming Singh suffered past persecution when supporters of the Bharatiya Janata Party ("BJP") threatened and assaulted him because he supported the Shiromani Akali Dal Amritsar Party ("Mann Party") and refused to sell drugs for them, the Department of Homeland Security ("DHS")

---

[2] Citations are to regulations in effect at the time of the IJ's decision. *See Garcia v. Garland*, 64 F.4th 62, 67 n.3 (2d Cir. 2023).

met its burden to rebut Singh's fear of future persecution by establishing, by a preponderance of the evidence, that Singh could have avoided future persecution through internal relocation and that it would be reasonable to expect him to do so. *Id.* §§ 1208.13(b)(1)(i)(B) (asylum), 1208.16(b)(1)(i)(B) (withholding).

Contrary to Singh's argument that the agency improperly placed the burden on him to show that he could not safely relocate, the agency stated the correct standard, and we see no basis to conclude that the agency did not apply it. Singh's assertion that DHS failed to present evidence or elicit testimony about the safety or reasonableness of relocation is belied by the record, which reflects that DHS elicited this relevant testimony from Singh. Factors relevant to the reasonableness of internal relocation may include "whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties." *Id.* §§ 1208.13(b)(3), 1208.16(b)(3).

The record does not compel the conclusion that DHS failed to meet its burden. As a preliminary matter, Singh's arguments to the contrary are unavailing. Singh's assertion that he testified that his family "is still being

5

attacked" and that they "tried to live in a different state in India, but they were attacked there also," is unsupported by citation (as required by Federal Rule of Appellate Procedure 28(a)), and is contrary to the record—he testified that he had never considered moving in India and did not testify that his family moved or was harmed. Petitioner's Br. at 17. Singh also asserts that a 2020 U.S. State Department report supports his claim, but he does not explain why the Court should consider this report, which postdates the IJ's decision and was never presented to the agency. *See* 8 U.S.C. § 1252(b)(4)(A) ("[T]he court of appeals shall decide the petition only on the administrative record on which the order of removal is based").

Nor is there support for Singh's argument elsewhere in the record. Singh testified that he was a worker in his party who was targeted by BJP supporters in his home state of Haryana who wanted him to sell drugs. As the IJ noted, he did not allege that the government was seeking him out, or that he engaged in high-profile activities that might draw government attention in other areas of India. *See Singh*, 11 F.4th at 116 ("Neither the IJ nor the BIA was required to attribute an attack by members of a regional party in [one state] to the national government of India."). The record contains a description of the arrest and police abuse of one

6

person affiliated with the Mann Party, but not of workers like Singh.

Singh also testified that he could not safely relocate in India because he would have to present identification to access services, which the police could use to alert the BJP supporters who abused him to his location. The record reflects that India is building a biometric identification system, which is required for many services, and that some states use the data to map participants' residences, but others have limited the system's use. Even if this system could be used to locate Singh, it does not necessarily follow that there is a reasonable possibility that the government would share this information with Singh's abusers or that the BJP members who targeted him would travel outside the area of Haryana where they are active to harm him. The IJ reasonably concluded that this fear was speculative because the BJP is not the ruling party in every Indian state, Singh did not allege that his BJP-affiliated abusers were government officials, and his only ground for believing that the police would provide his abusers with information was that one officer refused to accept a report against them. *See Singh*, 11 F.4th at 115–16 (upholding the agency's determination that a Mann Party member who had alleged harm in the region of Punjab at the hands of members of a political party affiliated with the BJP could have reasonably relocated).

Singh's other arguments against the reasonableness of relocation also fail. Singh testified that it would be difficult for him to live in areas where there are few Sikhs because of discrimination, but he has not challenged the IJ's reasoning that there are Sikh communities in other areas of India. As to the remaining factors, the IJ properly considered Singh's lack of family ties outside Haryana, ninth-grade education, language skills, age, and lack of physical impediments to employment in concluding that relocation was reasonable. While his limited education, language skills, and lack of social support may weigh against a reasonableness finding, they are not overwhelming, and Singh does not argue here that the agency was required to conclude that relocation would be unreasonable on that basis.

For the reasons above, Singh "fails to establish [his] eligibility for asylum" and, as such, "necessarily fails to establish eligibility for withholding of removal." *Yan Juan Chen*, 658 F.3d at 254 (internal quotation marks omitted).

II.  Convention Against Torture

In contrast to asylum and withholding, the burden for CAT relief remained with Singh to show he would "more likely than not" be tortured, *see* 8 C.F.R. § 1208.16(c)(2), "by, or at the instigation of, or with the consent or acquiescence of, a public official," *see id.* at § 1208.18(a)(1). But the same evidence used to support

8

the possibility of future torture for Singh's asylum and withholding claims is relevant to his CAT claim. The agency considers "all evidence relevant to the possibility of future torture . . . including . . . [e]vidence that the applicant could relocate to a part of the country of removal where he . . . is not likely to be tortured." 8 C.F.R. § 1208.16(c)(3)(ii).

The evidence on the record supports the agency's denial of CAT protection. Singh's CAT claim rested on the same facts as his asylum claim, and as the record did not demonstrate the risk of harm required for asylum, he "necessarily" failed to make the higher showing required for CAT relief. *Lecaj v. Holder*, 616 F.3d 111, 119–20 (2d Cir. 2010); *see also* 8 C.F.R. § 1208.16(c)(2); *Singh*, 11 F.4th at 118 (petitioner's "ability to relocate internally [to avoid persecution] means that he cannot establish a likelihood of torture"). As such, Singh fails to provide sufficient evidence to support a conclusion contrary to the agency's denial of CAT protection.

### III. Conclusion

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court